IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

JOANNE CARROLL,

        Petitioner,

  v.                                                                  Civil Action No.
                                                                          9:04-CV-00206 (FJS/GHL)

ELAINE LORD, Superintendent of
 Bedford Hills Correctional Facility,

        Respondent.

---

APPEARANCES:                          OF COUNSEL:

FOR PETITIONER:

JOANNE CARROLL, pro se
Bedford Hills, NY

FOR RESPONDENT:

HON. ANDREW M. CUOMO            LISA E. FLEISCHMANN, ESQ.
Office of the Attorney General      Ass't Attorney General
State of New York
207 Genesee Street
Utica, NY 13501

GEORGE H. LOWE
U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION AND ORDER[1]

      Petitioner pro se Joanne Carroll ("Carroll") is currently an inmate in the custody

of the New York State Department of Correctional Services ("DOCS") at Bedford Hills

Correctional Facility.  Carroll pleaded guilty on January 18, 2001 to Robbery in the

---

     [1] This action has been referred to this Court by Judge Scullin for a report and
recommendation, which this Court now issues pursuant to 28 U.S.C. § 636(b) and
Northern District of New York Local Rule 72.3(c).

First Degree in Chenango County, New York and is presently serving an aggregate determinate term of fifteen years in prison followed by five years postrelease supervision.  Carroll now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) her guilty plea was based upon fraud and misinformation and therefore not knowing, voluntary or intelligent, and (2) she was denied the effective assistance of counsel.  For the reasons which follow, it is recommended that the petition be denied.

I. **Background**

A. State Court Proceedings

On July 17, 2000, Carroll, Anthony and Paul Escalante, Tammi Van Deusen, and Xavier Valentine went to the home of Edward Pastore on Lewis Road in the Town of Norwich, Chenango County.  P. 10-11, 13.[2]  Carroll and Valentine went into the house with the intent to take a safe that was supposed to contain fifteen pounds of marijuana. P. 11.  Valentine brought a shotgun with him, and Carroll watched Valentine load shells into the shotgun.  P. 11-12.  The victim struggled with Valentine, and was shot and killed during the course of the robbery.  P. 11-12.

On July 28, 2000, Carroll was arrested in Staten Island (Richmond County), New York.  Dkt. 17, Exh. H.  She was charged there with Criminal Possession of a Controlled Substance as a class B felony.[3]  She was eventually returned to Chenango

---

[2]    "P." followed by a number refers to the pages of the plea transcript included with respondent's answer.  Docket No. 18, Exh. M.

[3]    The record seems to indicate that Carroll faced multiple charges in Richmond County aside from the single count of criminal possession of a controlled substance as a class B felony.  Dkt. 17, Exh. H.

County, where a grand jury returned a ten-count indictment against her and Valentine for crimes that included second degree murder, first and second degree burglary, first and second degree robbery, and first degree criminal use of a firearm.  Dkt. 17, Exh. B, at 3.

On January 18, 2001, Carroll entered into a negotiated plea agreement. Under its terms, Carroll pleaded guilty to one count of first degree robbery in satisfaction of the indictment for a promised determinate sentence of fifteen years in prison and five years postrelease supervision.  P. 4-5.  Carroll also agreed to waive her right to appeal.  P. 5, 9-10.  In exchange for the plea, all pending charges in Richmond County would also be dismissed.  P. 5; Dkt. 17, Exh. H.  On February 9, 2001, Carroll was sentenced to the negotiated term.  S. 2-4, 8.[4]

Carroll appealed her conviction, alleging that the guilty plea was the result of misinformation and coercion.  Specifically, Carroll claimed that she pleaded guilty to avoid an additional prison term of 8 1/3 to 25 years for A-level felony drug charges in Richmond County, but that at the time of her plea, no charges were pending there. See Dkt. No. 17, Exh. A.  Carroll also alleged that counsel was ineffective for not fully investigating the Richmond County charges.  She maintained that, had he done so, he would have discovered that they had been dismissed four months before the plea. Id.  The prosecutor countered that Carroll's claims were not preserved because Carroll did not move to withdraw her guilty plea or to vacate her conviction, and that the claims involved matters outside the record.  The prosecutor also asserted that the

---

[4]   "S" followed by a number refers to the pages of the sentencing transcript included with respondent's answer.  Docket No. 18, Exh. N.

guilty plea was voluntary.  Dkt. 17, Exh. B.

On November 7, 2002, the Appellate Division, Third Department affirmed the conviction and sentence.  People v. Carroll, 748 N.Y.S.2d 877 (3rd Dept. 2002).  See Docket No. 17, Exh. C.   The Appellate Division found that Carroll's claims were unpreserved and involved matters outside the record and therefore were not the proper subject of a direct appeal.  Id.  Leave to appeal to the New York Court of Appeals was denied on March 4, 2003.  People v. Carroll, 790 N.E.2d 280 (N.Y. 2003).  See Docket No. 17, Exh. D.

Carroll then filed a pro se motion to vacate her conviction pursuant to New York Criminal Procedure Law ("CPL") 440.10 on or about February 9, 2004.  See Docket No. 17, Exh. E.  In her motion, Carroll claimed that her guilty plea was not knowingly entered because she pleaded guilty to avoid an additional prison sentence on the Richmond County charges, but that those charges had already been dismissed on September 26, 2000.  Dkt. No. 1, ¶ 13; Dkt. 17, Exh. E; G at 3.  Carroll claimed that she did not receive accurate information regarding the status of the Richmond County charges, resulting in an unknowing plea.  She further alleged that counsel was ineffective for failing to investigate the status of the charges in Richmond County.  Dkt. No. 17, Exh. E.   The prosecutor filed an Affidavit in Opposition to Notice of Motion to Vacate Judgment on March 9, 2004.  Dkt. No. 17, Exh. F.

After reviewing both submissions, the state court (W. Howard Sullivan, J.), granted Carroll's request for a hearing. It noted that, in support of her claims, Carroll attached a Division of Criminal Justice Services (DCJS) record showing the Richmond County charges were dismissed on September 26, 2000, a record of the

4

Criminal Court, Richmond County, indicating the charges had been dismissed on September 26, 2000, and the transcript of her plea that indicated the plea was in full satisfaction of charges pending in Richmond County.  See Dkt. No. G. The court also noted that the prosecutor did not present evidence that conclusively refuted Carroll's allegations, which entitled Carroll to a hearing.  Id.

On April 28, 2004, the prosecutor filed a Supplemental Affidavit in Opposition to Defendant's Notice of Motion to Vacate Judgment.  Dkt. No. 17, Exh. H.  In the affidavit, District Attorney Joseph A. McBride stated he contacted Louis Annunziata, the prosecutor assigned to handle Carroll's Richmond County charges. Dkt. No. 17, Exh. H.  Annunziata confirmed that his office withheld prosecution of Carroll and Valentine after speaking with prosecutors in Chenango County.  His records indicated a waiver of speedy trial time from July 30, 2000 to August 29, 2000.  Annunziata noted that even without the waiver, his office could have prosecuted Carroll at any time up until January 28, 2001, because the People have 180 days to prosecute felony offenses.  Id., Annunziata Affidavit at ¶ 3.[5]  Annunziata affirmed that although his office was "ready and able" to prosecute Carroll, it declined to do so on September 26, 2000 because of the pending plea agreement in Chenango County, "knowing that by mid January if this was not resolved in Chenango County we would have time to go forward and prosecute."  Id. at ¶ 4.  McBride also attached correspondence between Chenango and Richmond Counties.  In one of those letters,

_____

[5]     See Criminal Procedure Law §30.30(1)(a), which provides that the People have six months to commence a criminal action where at least one charge is a felony.

dated January 17, 2001, Annunziata indicated that his office would not prosecute Carroll's case and would consider it covered by the plea agreement in Richmond County.  Dkt. No. 17, Exh. H., Annunziata Letter.

On June 18, 2004, the state court issued a second decision.  Dkt. No. 17, Exh. I, Decision & Order.  The court framed the issue as whether Carroll's plea was "fraudulently induced by contemplating the dismissal of charges that were previously closed, or did [Carroll] receive the sentence she bargained for."  Id. at 4.  The court ruled that the supplemental affidavit and documents submitted by the prosecutor "conclusively refuted" Carroll's allegations and, since no controversy existed any longer, the motion was denied without a hearing.  Id. at 5.  Application for permission to appeal from the denial of the motion was denied on August 31, 2004.  See Docket 17, Exh. L.

### B. Proceedings in this Court

Carroll commenced this action on February 26, 2004 in the Northern District of New York.  See Petition (Dkt. No. 1).  At the time Carroll filed this petition, the CPL 440 motion was pending in state court.   This Court stayed Carroll's petition pending the resolution of her state court proceedings.  See Dkt. No. 5.  After receiving notice on September 16, 2004 from Carroll that the state court proceedings were resolved, this Court  directed the respondent to file a response to the petition.  Dkt. No. 15.   On November 9, 2004, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer and memorandum of law, together with pertinent state court records, in opposition to Carroll's petition.  Dkt. Nos. 16-18, 21.  In opposing Carroll's petition, respondent argues that petitioner's habeas claims have

6

no merit. See Dkt. No. 21.

## II. Discussion

### A.  Standard of Review

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2241.  Relief does not lie for errors of state law.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); DiGuglielmo v. Smith, 366 F.3d 130, 136-137 (2d Cir. 2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Carroll may obtain habeas relief by showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); Carey v. Musladin, 127 S. Ct. 649, 653 (2006); Campbell v. Burgess, 367 F. Supp3d 376, 380 (W.D.N.Y. 2004).  "By 'contrary to,' the state court decision may be either contrary to Supreme Court precedent on a question of law or the state court decision is opposite to a relevant Supreme Court case with 'materially indistinguishable' facts."  Johnson v. West, No. 9:04-cv-751, 2007 WL 952058 at *2 (N.D.N.Y. Mar. 29, 2007), quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  A state court unreasonably applies federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner.  Johnson v. West, 2007 WL 952058 at *2 (quoting Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).  Although " 'some increment of incorrectness beyond error is required' " in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the

7

mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111

(2d Cir. 2000); <u>see</u> <u>also</u> <u>Hawkins v. Costello</u>, 460 F.3d 238, 243 (2d Cir. 2006).  The

state court's determination of a factual issue is presumed to be correct, and the

petitioner has the burden of rebutting that presumption by clear and convincing

evidence.  28 U.S.C. § 2254 (e)(1); <u>DeBerry v. Portuondo</u>, 403 F.3d 57, 66 (2d Cir.

2005), <u>cert</u>. <u>denied</u> 546 U.S. 884 (2005); <u>Boyette v. Lefevre</u>, 246 F.3d 76, 88 (2d Cir.

2001).

B.  <u>Substance of Carroll's Claims</u>

Carroll claims in her petition that when she pleaded guilty in Chenango County

to first degree robbery, she believed that drug charges pending in Richmond County,

for which she could receive a consecutive sentence of 8 1/3 to 25 years in prison,

would be satisfied by the plea.  Dkt. No. 1, § 13.  Carroll asserts that her guilty plea

was not knowing, voluntary and intelligent because the Richmond County charges

had already been dismissed four months before her guilty plea.  <u>Id</u>.  Carroll also

claims her allegedly mistaken belief was the fault of trial counsel, who did not

adequately investigate the status of the Richmond County charges.  <u>Id</u>.

These same arguments were raised in the state court in Carroll's CPL 440

motion.  In denying the motion, the state court found that the dismissal of the

Richmond County charges was, in fact, part of the plea agreement Carroll entered

into in Chenango County.  Dkt. No. 17, Exh. I.  The court noted the content of

Annunziata's affidavit and the correspondence between Chenango and Richmond

Counties, and found that the correspondence showed that each county agreed that "a

plea by the defendant to Robbery in the First Degree here in Chenango County in

8

exchange for a determinate sentence of fifteen years would conclude with dismissal of the Richmond County charges against the defendant." Exh. I at 3-4.  It ruled that Annunziata's papers "'conclusively refute' the defendant's allegations that her plea to Robbery in the First Degree was fraudulently induced by ineffective counsel's failure to investigate and determine that the Richmond charges had been disposed of prior to her plea." Exh. I at 5.  That factual determination is presumed to be correct, and Carroll bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1); DeBerry, 403 F.3d at 66; Boyette, 246 F.3d at 88. She has not met her burden.

Carroll does not dispute that all parties agreed that the Richmond County charges would be dismissed as part of the plea agreement in Chenango County. Instead, Carroll's argument appears to be that because the charges were dismissed prior to her plea, that dismissal was unrelated to the plea agreement, making her plea the result of fraud and coercion.  See Dkt. No. 1, ¶ 13.  But, as the state court found, the record evidence shows that the timing of the dismissal of the Richmond charges is less important than the reason for that dismissal.

The Annunziata Affidavit makes clear that Richmond County agreed to dismiss its pending charges so long as Carroll pleaded guilty to first degree robbery in Chenango County.  Dkt. No. 17, Ex. H, I.  The fact that the charges were dismissed in September, 2000 - four months prior to the plea - did not guarantee that the charges were not still subject to revival if Carroll backed out of the Chenango County plea agreement.  In fact, Annunziata expressly stated that the charges were dismissed in September with the knowledge that if Carroll did not plead guilty in Chenango County,

9

the Richmond County charges could still be prosecuted through at least January 28,

2001.  Dkt. No. 17, Exh. H, Annunziata Affidavit, ¶¶ 3-4.   Carroll has not submitted

any evidence that rebuts the state court's finding that the Richmond County charges

were dismissed as part of the plea agreement in Chenango County.  Her petition on

that ground should be denied.

### 1.  Voluntariness of Guilty Plea

Carroll claims that her plea was not knowing, voluntary and intelligent.  Dkt.

No. 1, ¶ 13.  Respondent argues that this claim is without merit. Dkt. No. 17-18, 21.

The standard governing the acceptance of guilty pleas is neither recently

evolved, nor controversial.  "The longstanding test for determining the validity of a

guilty plea is 'whether the plea represents a voluntary and intelligent choice among

the alternative courses of action open to the defendant.'"  Hill v. Lockhart, 474 U.S.

52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31(1970)); see also

Parke v. Raley, 506 U.S. 20, 28-29 (1992) (plea is valid when it is both knowingly and

voluntarily made); Boykin v. Alabama, 395 U.S. 238, 242-43 (1969) (United States

Constitution requires that guilty plea be intelligently and voluntarily entered).  A

knowing plea is entered "'with understanding of the nature of the charge and the

consequences of the plea.'"  Santobello v. New York, 404 U.S. 257, 261 n.1, 92 S. Ct.

495, 498 n.1 (1971) (quoting Fed. R. Crim. P. 11); see Martinez v. Costello, No. 03

CIV 2763, 2004 WL 26306, at *5 (S.D.N.Y. Jan. 5, 2004) (citing Santobello and Rule

11); see also Hanson v. Phillips, 442 F.3d 789, 798 (2d Cir. 2006).

Applying this standard, to establish that a criminal defendant's guilty plea was

knowingly, intelligently and voluntarily entered the court must find, based upon the

record of the relevant plea proceedings, that he or she 1) was competent to proceed, and was fully aware of the nature of the charges faced; 2) had a rational and factual understanding of the proceedings; and 3) was cognizant of the constitutional protections relinquished upon entry of the plea.  Oyague v. Artuz, 393 F.3d 99, 106 (2d Cir. 2004); Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir. 1986), cert. dismissed 479 U.S. 805 (1986).  While "the question of whether a plea of guilty has been entered voluntarily within the meaning of the Constitution is often a complex one that involves mixed questions of law and fact[,]" the ultimate issue of whether a plea represents an effective waiver of federal Constitutional rights is controlled by federal law.  Oyague, 393 F.3d at 104.

At the heart of Carroll's claim that her plea was fraudulently induced is her insistence that because the Richmond County charges were dismissed prior to the entry of her guilty plea, they were not "pending" and part of the plea negotiation as she believed that they were.  But, as noted above, the record shows that the Richmond County charges were indeed dismissed as part of her plea agreement.  Accordingly, Carroll's plea was not based upon fraud or coercion, or upon any misrepresentation regarding the Richmond County charges.

Moreover, a review of the plea colloquy reflects that the trial court made a thorough inquiry to determine whether Carroll's guilty plea was knowing, voluntary and intelligent.  Carroll assured the court during the plea colloquy that she was competent to proceed by affirming that she was not under the care of a physician for any reason, that she was not at the time, nor had she ever been, under the care of a psychiatrist, mental health professional or substance abuse professional, that she

11

had never been institutionalized for mental or emotional disorders, that she had not

consumed any drug or alcohol within the prior 24 hours, and that there was nothing in

her life that prevented her from thinking clearly.  P. 5-7.  Carroll told the court she had

discussed the plea with counsel and was satisfied with counsel's services.  P. 7-8.

Carroll told the court she understood the rights she was giving up by pleading guilty.

P. 8-10.  She assured the court that she had not been promised anything other than

the terms of the plea agreement in order to induce her guilty plea.  P. 10.  Carroll then

allocuted and explained the details surrounding the crime, including that she and her

cohorts went to the victim's home to steal a safe containing marijuana and that,

during the robbery, the victim was shot and killed.  P. 11-13.   The state court's

rejection of Carroll's claim that her plea was not knowing, voluntary and intelligent

was not contrary to, or an unreasonable interpretation of, clearly established

Supreme Court precedent. Therefore, the petition on this ground should be denied.

### 2.   Effectiveness of Counsel

Carroll also claims that counsel was ineffective for not "convey[ing] accurate

information" concerning the status of the Richmond County charges.  Dkt. 1, ¶ 13.

Respondent argues that this claim is without merit.  Dkt. 17-18; 21 at 16-18.

The Sixth Amendment to the United States Constitution provides that: "[i]n all

criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of

Counsel for his defence." U.S. Const. amend. VI. To establish a violation of this right

to the effective assistance of counsel, a habeas petitioner must show both: (1) that

counsel's representation fell below an objective standard of reasonableness,

measured in the light of prevailing professional norms; and (2) resulting prejudice,

that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. Strickland v. Washington, 446 U.S. 674, 688-90 (1984); Wiggins v. Smith, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in Strickland.).[6] In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would not have pleaded guilty and would instead have gone to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Coffin, 76 F.3d 494, 498 (2d Cir. 1996), cert. denied 517 U.S. 1147 (1996); Baker v. Murray, 460 F. Supp2d 425, 434 (W.D.N.Y. 2006); Padilla v. Keane, 331 F. Supp2d 209, 215 (S.D.N.Y. 2004).

   To gauge whether a petitioner would have opted to have a trial if counsel gave him more information, courts should consider whether the record supports the finding that the plea was knowing, voluntary and intelligent. Padilla, 331 F. Supp2d at 216. If the record supports that finding, a guilty plea will not be rendered invalid because the petitioner had to choose between pleading guilty or facing trial on more serious charges. Id. Where counsel negotiates a favorable plea agreement, "no prejudice exists when a plea agreement lessens the severity of the sentence defendant would face if convicted at trial." Id. at 216 (quoting Feliz v. U.S., No. 01 cv 5544, 00 cr. 53, 2002 WL 1964347 at *7 (S.D.N.Y. Aug. 22, 2002).

   Here, a review of the record shows that Carroll received effective assistance.

---

   [6]In Williams v. Taylor, the Supreme Court declared that "the rule set forth in Strickland qualifies as "clearly established Federal law [.]" Williams, 529 U.S. 362, 391 (2000).

13

Counsel negotiated a plea agreement that disposed of nine out of ten charges

pending against her in Chenango County, including felony murder. Dkt. 17, Exh. B; P.

at 5.   The plea also disposed of charges pending in Richmond County, eliminating

the threat of a consecutive prison term if convicted on those charges.  Dkt. 17, Exh.

H, I.   There was no reason, under the facts and circumstances in this case, for

counsel to be concerned with the exact timing of the dismissal of the Richmond

County charges, since their dismissal was a certainty provided Carroll pleaded guilty

in Chenango County.  Dkt. 17, Exh. H.  The state court's rejection of Carroll's claim

that counsel was ineffective is not contrary to, or an unreasonable application of,

Supreme Court precedent, and the petition on this ground should be denied.

WHEREFORE, based upon the foregoing, it is hereby

RECOMMENDED, that the petitioner for a writ of habeas corpus (Dkt. No. 1)

be DENIED and DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to

file written objections to the foregoing report. Such objections shall be filed with the

Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10)

DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P.

72, 6(a), 6(e); Roldan v. Racette, 984 F.2d 85 (2d Cir.1993) (citing Small v. Sec'y of

Health and Human Servs., 892 F.2d 15 (2d Cir.1989)).

Date:  October 4, 2007
         Syracuse, New York

George H. Lowe
United States Magistrate Judge

14